UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MATTHEW THORNTON,

                         Plaintiff,

  -v-                                                 9:14-CV-679
                                                          (DNH/CFH)

COUNTY OF ALBANY; CHRISTIAN CLARK,
Superintendent, Albany County Correctional
Facility; ARTHUR BROTHERS, Corrections
Officer, Albany County Correctional Facility;
BRIAN ECKLES, Corrections Officer, Albany
County Correctional Facility; JEFFREY HUNT,
Corrections Officer, Albany County Correctional
Facility; and PATRICK GALARNEAU, Corrections
Officer, Albany County Correctional Facility,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

OFFICE OF JESSICA M. GORMAN         JESSICA M. GORMAN, ESQ.
Attorney for Plaintiff
74 Chapel Street, 2nd Floor
Albany, New York 12207

ALBANY COUNTY ATTORNEY'S OFFICE    PATRICK J. COLLINS, ESQ.
Attorneys for Defendants                      KEVIN M. CANNIZZARO, ESQ.
112 State Street, Suite 1010
Albany, New York 12207

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

This civil action arises out of the assault of plaintiff Matthew Thornton ("Thornton" or "plaintiff") on two occasions during his detainment at Albany County Correctional Facility ("ACCF") in Albany, New York.

Thornton asserts claims pursuant to 42 U.S.C. § 1983 and state law alleging excessive force, failure to intervene, municipal liability, assault and battery, negligence, and negligent hiring and supervision against the County Of Albany ("the County"), ACCF Superintendent Christian Clark ("Supt. Clark"), and Corrections Officers Arthur Brothers ("CO Brothers"), Brian Eckles ("CO Eckles"), Jeffrey Hunt ("CO Hunt"), and Patrick Galarneau ("CO Galarneau") (collectively "defendants").

Following the completion of discovery, defendants moved pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on plaintiff's federal claims.[1] Plaintiff opposed and defendants replied. The motion was fully briefed and oral argument was heard on September 21, 2016 in Utica, New York. Decision was reserved.

**II. BACKGROUND**

On March 8, 2013, while incarcerated at ACCF, Thornton was assaulted by two inmates on the 1 West Tier. See Defs.' Statement of Material Facts, ¶ 15 ("Rule 7.1 Stat.").[2]

---

[1] Defendants' motion seeks summary judgment of the complaint in its entirety, however they have made no arguments in support of dismissal of plaintiff's state law claims.

[2] Facts cited from defendants' Statement of Material Facts have been admitted by plaintiff in corresponding paragraphs of his response to same. Plaintiff admits the majority of facts set forth by defendants, however for those he denies, he fails to cite to admissible evidence in the record as required by the Local Rules and instead cites to his complaint. See L.R. 7.1(a)(3) ("Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.").

(continued...)

During the assault, lasting a few minutes, plaintiff was repeatedly punched and kicked in the face and body, which continued after he fell to the floor. Compl. ¶¶ 18, 19, 22. His scalp was sliced with a weapon believed to be a razor blade. Id. ¶ 21. He sustained serious injuries including a scalp laceration, broken teeth, and fractured jaw. Id. ¶ 22.

CO Brothers was assigned to the 1 West Tier at that time, and upon seeing the altercation, made several orders for the inmates to stop fighting. Rule 7.1 Stat. ¶ 17. After several orders to stop fighting, Thornton and the other inmates complied and were then locked in their cells. Id. ¶ 18. Each inmate then requested to go to the medical unit. Id. ¶ 19.[3] Immediately following the altercation, plaintiff was moved to the 3 West Tier. Gorman Decl., Ex. 2 (1 West Tier Log). He was thereafter treated at the medical unit for a laceration on his scalp, fractured tooth, missing tooth, and mandibular fracture. Rule 7.1 Stat. ¶ 20. He was later transferred to Albany Medical Center where staples were placed in his scalp and he underwent surgery for placement of a metal plate in his jaw. Id. ¶ 21. He was eventually given a disciplinary ticket and served 14 days in keep-lock. Compl. ¶ 31. He thereafter received further medical care at ACCF on numerous occasions, but grew unhappy with the treatment. Rule 7.1 Stat. ¶¶ 22, 23.

---

[2](...continued)
His unverified complaint contains mere allegations which are insufficient to oppose summary judgment, and thus those facts denied but not supported by admissible evidence are deemed admitted. Further, plaintiff did not set forth additional facts which he contends are in dispute, though permitted to do so and represented by able counsel. Id. ("The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.").

Many facts from plaintiff's complaint, while not supported with admissible evidence at this juncture, will be included here for background purposes only.

[3] Plaintiff contends that CO Brothers and CO Eckles were 20–40 feet away at the time of the incident, and although he was bleeding from his mouth, face, head, and screaming for help, neither intervened or attempted to help. Compl. ¶¶ 20, 23. He alleges that when the assault ended, he again yelled to the officers for help. Id. ¶ 24. He asserts they looked directly at him, did nothing to assist him, and instead rang the bell for inmates to lock in to their cells for lunch. Id.

Thornton received a grievance form from Corrections Officer Michael Benedetto on April 11, 2013. Id. ¶ 25. According to plaintiff, ACCF medical staff failed to timely remove the staples from his scalp, allowing his skin to grow over the staples causing him pain. Compl. ¶ 32. After filing several sick slips, id. ¶ 33, he was taken to the medical unit at approximately 10:00 p.m. on April 11, 2013, Rule 7.1 Stat. ¶ 25. CO Hunt and CO Galarneau stood watch in the doorway as nurses sifted through plaintiff's scalp looking for the staples. Rule 7.1 Stat. ¶¶ 26, 28. As the nurses continued to look for the staples, plaintiff yelled in pain. Id. ¶ 27. CO Hunt believed plaintiff was non-compliant with the nursing staff and ordered him to comply. Id. ¶ 30. CO Hunt then advised the nursing staff to leave the room and he entered the room, where he and plaintiff were alone for approximately 25 seconds while CO Galarneau stood outside observing. Id. ¶¶ 31, 32.

Defendants admit that CO Hunt used force against Thornton and the security alarm was sounded. Id. ¶ 33.[4] They contend the force used was appropriate to subdue plaintiff. Id. Plaintiff was then handcuffed and taken to the Special Housing Unit. Id. ¶ 34. The incident was investigated; witness statements, incident reports, use of force reports, and plaintiff's statement were recorded. Id. ¶ 35.[5]

---

[4] Again, though not relevant for purposes of this motion, according to the complaint, CO Hunt punched Thornton above his right eye, knocking him back onto the exam table. Compl. ¶ 41. He then grabbed plaintiff's hair and punched him in the face and upper body. Id. Thornton fell off the exam table onto the floor and attempted to crawl out of the room while CO Hunt continued to punch him. Id. ¶¶ 41, 43. CO Galarneau then yelled for someone to sound the alarm and entered the exam room himself, punching Thornton's legs and buttocks as CO Hunt sat on his back and pinned him down. Id. ¶¶ 42, 43. Several corrections officers including a sergeant responded to the exam room. Id. ¶ 44. Plaintiff was then handcuffed; CO Hunt continued to punch him in the back until the sergeant ordered him to stop. Id. ¶ 45. As a result of the April 11 assault, plaintiff suffered serious injuries including re-injury of his jaw, nerve damage, cuts, swelling, and bruising in his face. Id. ¶ 59.

[5] According to the complaint, Thornton was charged with assaulting an officer, refusing to obey a direct order, obstructing/interfering with staff, making a threat, fighting, and failing to obey inmate rules. Compl. ¶ 50. He was found guilty of all charges on April 18, 2013 and sentenced to six months in solitary

(continued...)

Thornton submitted a handwritten letter which he referred to as a grievance on April 14, 2013 regarding the April 11, 2013 incident. Id. ¶ 36. This letter was provided directly to Chief Correction Officer Brian Mooney ("Chief Mooney") who spoke with plaintiff regarding his letter. Id. ¶ 36. Plaintiff never filed a formal grievance utilizing the prison grievance procedure regarding the April 11, 2013 incident. Id. ¶ 37.

On April 14, 2013, Thornton filed a formal grievance regarding the medical and dental care he received at ACCF. Id. ¶ 40. On May 7, 2013, plaintiff filed an additional grievance regarding his medical and dental care. Id. ¶ 41. He admits that he did not file a formal grievance regarding the March 8, 2013 incident nor the April 11, 2013 incident. Id. ¶ 42.

## III. LEGAL STANDARD

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

---

[5](...continued)
confinement. Id. ¶ 51. After submitting a grievance about his disciplinary hearing and charges and requesting a time cut, Chief Mooney modified plaintiff's sentence from solitary confinement to long term keep-lock. Id. ¶¶ 57, 58.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. DISCUSSION

Thornton asserts the following causes of action: (1) excessive force against CO Hunt and CO Galarneau based on the April 11, 2013 assault; (2) failure to intervene against CO Brothers and CO Eckles based on the March 8, 2013 assault and CO Galarneau based on the April 11, 2013 assault; (3) a claim of municipal liability[6] against the County and Supt. Clark for failure to train and unconstitutional customs, policies, and practices; (4) state law assault and battery against CO Hunt, CO Galarneau, and the County based on the April 11, 2013 assault; (5) state law negligence against CO Brothers, CO Eckles, and the County for failing to help during the March 8, 2013 assault; and (6) state law negligent hiring and

---

[6] Pursuant to Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658 (1978).

supervision against the County and Supt. Clark.  He requests compensatory and punitive damages.  Plaintiff also asserted claims against John Does 1-6, unidentified corrections officers, but never named them in discovery.

### A. Failure to Exhaust Administrative Remedies

Defendants contend Thornton's federal claims must be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  Plaintiff responds that defendants waived any failure to exhaust defense because they failed to plead it in their answer.  He alternatively argues that even if defendants did not waive the defense and may assert it now, they have not carried their burden to show on summary judgment that he failed to exhaust, because he exhausted through both the informal process at ACCF and by submitting a handwritten letter complaint.  Defendants contend they did in fact preserve defense by pleading as an eleventh affirmative defense, that "[p]laintiff's claims are barred by his failure to satisfy conditions precedent to suit." Answer, ¶ 111.

The PLRA requires an inmate to exhaust "such administrative remedies as are available" before bringing suit to complain of prison conditions or actions taken by prison officials, such as the use of excessive force.  42 U.S.C. § 1997e(a); see Ross v. Blake, ___U.S.___, 136 S. Ct. 1850, 1854–55 (2016).  One of the purposes of the PLRA is to give corrections officials an opportunity to resolve inmate complaints before the inmate files suit. Jones v. Bock, 549 U.S. 199, 219 (2007).  The PLRA requires "proper exhaustion," which means "using all steps that the [prison grievance system] holds out, and doing so properly (so that the [prison grievance system] addresses the issues on the merits)."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted).

In Hemphill v. New York, the United States Court of Appeals for the Second Circuit set forth a three-part inquiry to guide analysis of whether a plaintiff has satisfied the PLRA. 380 F.3d 680, 686–91 (2d Cir. 2004). As the Second Circuit recently reiterated:

> The first part involves an assessment whether administrative remedies were in fact available to the plaintiff; the second part instructs courts to consider whether defendants forfeited the affirmative defense of exhaustion by failing to preserve it or should be estopped from raising it because their own actions inhibited the plaintiff's ability to exhaust administrative remedies; and the third part directs courts to determine whether special circumstances existed that justified a plaintiff's failure to exhaust remedies that were available and not subject to estoppel. See Amador v. Andrews, 655 F.3d 89, 102 (2d Cir. 2011) (summarizing Hemphill inquiry).

Williams v. Corr. Officer Priatno, 829 F.3d 118 (2d Cir. 2016).[7]

Failure to exhaust administrative remedies is an affirmative defense under the PLRA. Jones, 549 U.S. at 216. A party responding to a pleading "must affirmatively state any avoidance or affirmative defense," Fed. R. Civ. P. 8(c)(1), and generally, "[f]ailure to plead an affirmative defense in the answer results in the waiver of that defense and its exclusion from the case." Satchell v. Dilworth, 745 F.2d 781, 784 (2d Cir. 1984) (internal quotation marks omitted). Nonetheless, "a district court may entertain unpleaded affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." Rose v. AmSouth Bank of Fla., 391 F.3d 63, 65 (2d Cir. 2004) (internal quotation marks, ellipsis and alteration omitted).

---

[7] The United States Supreme Court in Ross v. Blake recently clarified certain circumstances in which a plaintiff's obligation to exhaust administrative remedies may be excused if remedies were unavailable. The Hemphill inquiry at issue here though, "whether defendants forfeited the affirmative defense of exhaustion by failing to preserve it," remains unchanged following Ross. Williams, 829 F.3d 118.

Defendants failed to assert exhaustion of administrative remedies as an affirmative defense in their answer, filed on September 8, 2014. They failed to include this affirmative defense despite asserting twenty-eight other affirmative defenses. Id. ¶¶ 101–128. Defendants' eleventh affirmative defense alleges "Plaintiff's claims are barred by his failure to satisfy conditions precedent to suit." Id. ¶ 111. A review of the County's answers in four other cases with apparent PLRA requirements, brought to the undersigned's attention by plaintiff, suggests the County routinely raises failure to comply with the PLRA or failure to exhaust administrative remedies as individual affirmative defenses, often in addition to the affirmative defense of failure to comply with, or satisfy conditions precedent. See Hinds v. Cnty of Albany, No. 9:15-cv-1325, ¶ 82 ("Plaintiff has failed to comply with the Prisoner Litigation Reform Act."), ¶ 91 ("Plaintiff's claims are barred by her failure to satisfy conditions precedent to suit."); Chriss v. Cnty of Albany, No. 1:08-cv-678, ¶ 74 ("Plaintiff has failed to exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e."); Carpenter v. Apple, No. 9:15-cv-1269, ¶ 146 ("Plaintiff has failed to exhaust administrative remedies."), ¶ 147 ("Plaintiff has failed to meet conditions precedent to suit."), ¶ 148 ("Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to comply with the Prisoner Litigation Reform Act."); Smith v. Roberson, No. 9:15-cv-930, ¶ 66 ("Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to comply with the Prisoner Litigation Reform Act."), ¶ 75 ("Plaintiff's claims are barred by her failure to satisfy conditions precedent to suit."). While certainly not conclusive, these cases suggest that the County intends the defenses of failure to exhaust administrative remedies and failure to comply with conditions precedent as two separate affirmative defenses.

Defendants urge their eleventh affirmative defense is sufficient to preserve failure to exhaust for two reasons: (1) the scope of "conditions precedent to suit" includes failure to exhaust administrative remedies, and (2) their asserted language satisfies the pleading requirements of Rules 8(c) and 9(c). However the defendants have pointed to no controlling caselaw providing that "failure to comply with conditions precedent" or "failure to satisfy conditions precedent to suit" is sufficient to preserve a failure to exhaust administrative remedies defense under the PLRA.

Rule 8, General Rules of Pleading, provides that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. Rule 8(c). District courts in this Circuit have struggled with the applicability of heightened pleading requirements to affirmative defenses, see e.g., Tardif v City of New York, 302 F.R.D. 31, 32–33 (S.D.N.Y. 2014), and the Second Circuit has not ruled on the applicability of the Twombly/Iqbal[8] standard to affirmative defenses. Without deciding whether defendants need be held to this higher standard, it is prudent to at least require defendants to include enough language to provide plaintiff with "fair notice" of defenses, in line with the prevailing pleading standard in the Second Circuit as noted by defendants. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). Defendants have not pointed to any controlling caselaw providing that they cannot or should not be required to explicitly plead "failure to exhaust," "failure to exhaust administrative remedies," "failure to comply with the PLRA," or similar language in order to preserve such a defense under the PLRA, and there is no reason why they cannot be required to do so. Accordingly, defendants' eleventh affirmative defense is insufficient to

---

[8] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

preserve the affirmative defense of failure to exhaust administrative remedies under the PLRA and the defendants are precluded from raising it now.

While it is true that a court may entertain unpleaded affirmative defenses at the summary judgment stage, plaintiff would be unduly prejudiced were defendants permitted to argue failure to exhaust, eighteen months after this lawsuit was commenced. As plaintiff explains, had this affirmative defense been asserted in defendants' answer, plaintiff would have conducted discovery and depositions on this issue, to explore, for example, the practices and customs at ACCF regarding informal and formal grievances, the number and content of grievances recorded in the year at issue and subsequent years, reports or evidence regarding issues with failures to provide inmates with formal grievance forms and with documenting informal grievances, and information about personnel at ACCF responsible for handling grievances and his grievances specifically. Defendants have proffered no excuse for their delay in raising this affirmative defense and have thus waived it. Accordingly, there is no need to address whether defendants' eleventh affirmative defense is pleaded with sufficient particularity and in compliance with Rule 9(c).

Even if defendants preserved the failure to exhaust defense and could assert it now, their motion would still be denied because they have not carried their burden to show plaintiff failed to exhaust his administrative remedies as a matter of law. "[G]iven that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies." Smith v. Kelly, 985 F. Supp. 2d 275, 285 (N.D.N.Y. 2013) (Suddaby, J.). "The procedure for exhaustion is not defined by the PLRA, but rather by the rules of the facility or jurisdiction in which the inmate-plaintiff is incarcerated. Espinal v. Goord, 558 F.3d 119, 134 (2d Cir. 2009).

The ACCF's grievance procedures are provided to inmates in the ACCF Inmate Rules and Regulations Information Book. Collins Decl., Ex. I. The ACCF grievance process includes both informal and formal steps, and inmates are required to exhaust the informal process before using the formal process. Id. 24. The process first requires the inmate to attempt to resolve the issue with the officer assigned to their housing unit. Id. ¶ 1. The second step provides: "If for some reason you and the officer are unable to reach an acceptable resolution through the informal process, you may request, and will receive, a grievance form to fill out from the unit supervisor. Once you receive a formal step, you will have 5 days to submit your grievance." Id. ¶ 2. Step 3 states "You must file a grievance within five days of the date of the alleged act or occurrence giving rise to the grievance." Id. ¶ 3. The remaining steps detail how the grievance will be investigated, how and when a decision will be rendered, and the appellate review process.

The inmate handbook is unclear. It requires the inmate to first exhaust the informal process, and if an acceptable resolution is not reached, to then file a grievance within five days of receiving a "formal step" (i.e. receiving a grievance form). Yet, the procedure requires the inmate to "file a grievance" within five days of the act giving rise to it. There are no time frames limiting when the inmate must begin the informal process, how long he or she should let the informal process continue on to attempt to resolve the issue before requesting a formal process, how long he or she should wait to receive a grievance form from a supervisor, or what he or she should do if a grievance form is never received.

According to the ACCF grievance procedures, exhaustion is satisfied if a resolution is reached informally, and Thornton has put forth evidence that he exhausted his available administrative remedies with respect to both the March 8 and April 11 assaults because he

reached informal resolutions of his issues and defendants have not shown otherwise. His claim regarding the March 8, 2013 assault is that CO Brothers and CO Eckles failed to protect him from and during the assault by other inmates. After the incident, he was transferred to a different unit away from the inmates who assaulted him. Therefore, the danger that CO Brothers and CO Eckles failed to protect plaintiff from was removed and his issue resolved. He would have had no need to initiate the formal grievance process because an acceptable resolution was reached.

With respect to the April 11, 2013 assault, defendants acknowledge that Thornton informally resolved his issue. Plaintiff's April 14, 2013 handwritten letter complaint was provided to Chief Mooney, who went on to talk directly with him. As defendants note: "Apparently satisfied with Chief Mooney's statement, plaintiff never filed a formal grievance . . . ." Defs' Mem. of Law, 3. Thornton testified that he spoke to Chief Mooney about being assaulted and Chief Mooney said he would look into it. Collins Decl., Ex. C, p.147–49. Plaintiff also alleges that his disciplinary sentence after the April 11, 2013 incident was later reduced by Chief Mooney from solitary to long term keep-lock.

Defendants' own policy requires inmates to utilize the informal process first, and only proceed to the formal process if an acceptable resolution is not reached. Defendants have not carried their burden to show that Thornton has failed to exhaust his available administrative remedies. Instead, there is evidence that he resolved his issues informally.

**B. Monell Claim**

Thornton alleges that the County failed to institute and implement appropriate policies at the ACCF on a variety of subjects including the right to be free from excessive force and free from assault by other inmates. Compl. ¶ 81. Alternatively he argues that the County

has policies addressing these topics but through gross negligence demonstrated deliberate indifference to inmates by failing or refusing to enforce these policies. Id. ¶ 82. Defendants argue the Monell claim must be dismissed because plaintiff fails to allege a policy, practice, usage, or custom that was put in place by policymakers and caused a deprivation of his constitutional rights.

Municipal liability under § 1983 requires a plaintiff to show that the "municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or practice, or (3) the decision of a municipal policymaker with final policymaking authority." Zherka v. DiFiore, 412 F. App'x 345, 348 (2d Cir. 2011) (summary order). In order to hold the County liable under § 1983, plaintiff must put forth sufficient evidence to show that individual defendants' unconstitutional actions were taken pursuant to an official municipal policy, custom, or practice. Monell, 436 U.S. at 690–91; see also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).

The plaintiff's complaint simply recites the text of § 1983. With respect to the failure to implement policies, Thornton has not put forth any evidence to show that a policymaker such as Supt. Clark was deliberately indifferent to the need to train corrections officers on the use of excessive force or on inmate on inmate assault protocol, and that the lack of such training caused a deprivation of his constitutional rights. There is no evidence in the record that ACCF routinely violated inmates' rights by using excessive force or inappropriately handled inmate on inmate violence. Further, there is a use of force policy in place and plaintiff has not shown that it allows or causes routine or excessive use of force. Similarly, there are guidelines in place on inmate classification and plaintiff does not argue that these result in inmate on inmate violence. Therefore Thornton has not put forth evidence to show that the

County nor Supt. Clark were deliberately indifferent by failing or refusing to enforce the ACCF's existing policies.

As there is absolutely no admissible evidence in the record on which the County or Supt. Clark could be held liable on a theory of municipal liability, plaintiff's Monell claim will be dismissed.

## V. **CONCLUSION**

Defendants' motion for summary judgment will be granted in part and denied in part. Thornton's Monell claim against Albany County will be dismissed. His excessive force and failure to intervene claims will remain, along with his three state law causes of action for negligence, assault and battery, and negligent supervision and hiring, for which defendants did not move for dismissal on.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED in part and DENIED in part;

2. Defendants' motion to dismiss plaintiff's § 1983 claim for failure to intervene against CO Brothers, CO Eckles, and CO Galarneau and for excessive force against CO Hunt and CO Galarneau is DENIED; and

3. Plaintiff's § 1983 claim for municipal liability is DISMISSED.

IT IS SO ORDERED.

Dated: October 4, 2016
      Utica, New York.

United States District Judge